**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

SAFECO INSURANCE COMPANY OF INDIANA,

Plaintiff,

v.

JAMES MONTIVER, *et al.*,

Defendants.

Case No. 3:25-cv-00039-SLG

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 39 is Defendants James and William Montiver's Motion for Summary Judgment. Plaintiff Safeco Insurance Company of Indiana responded in opposition and filed a Cross-Motion for Summary Judgment at Docket 53. Defendants replied at Docket 57. Oral argument was heard on April 22, 2026, in Anchorage, Alaska.[1]

## BACKGROUND

In March 2015, the Montivers purchased a three-story home at 225 White Cliff Avenue ("the Residence") in Ketchikan, Alaska.[2] The Residence was insured under an Alaska Quality-Plus Homeowners Policy (the "Policy") issued by Safeco.[3]

[1] Docket 66.

[2] Docket 39-2 at ¶¶ 1-2; Docket 57-1 at ¶ 1. This order cites to the Declaration of James Montiver, which is substantially similar to the Declaration of William Montiver. *Compare* Docket 39-2, *with* Docket 39-3.

[3] Docket 39-2 at ¶¶ 1-2.

The Residence was in Ketchikan, Alaska, a city located within a temperate rainforest known for frequent heavy rainfall and strong winds.[4] The Residence was located at the base of a sloping mountainside.[5] On that mountainside sits an old-growth rainforest, with trees over 50 feet tall and many several feet wide in diameter.[6]

On August 25, 2024, Ketchikan experienced heavy rainfall and wind gusts.[7] The precipitation levels that day were the largest recorded weather event in 2024.[8] At approximately 4:00 p.m., a significant mass of heavily forested land calved off the mountainside and began moving down towards Ketchikan.[9] The front of the debris flow was "a significant mass of large fallen trees."[10] The Residence was located approximately 560 feet below the starting point of the debris flow.[11] The debris flow traveled down the mountainside, flowed across the Third Avenue

---

[4] Docket 39-2 at ¶¶ 1, 3-4, 10; Docket 53-3 at 4 ("The Ketchikan area experiences a maritime climate characterized by moderate temperatures, high precipitation (especially between September and February), and moderate winds.").

[5] *See* Docket 39-5 at 2.

[6] Docket 53-3 at 4-5.

[7] Docket 53-3 at 1, 4 ("Rainfall was measured at up to 0.25 inches per hour with a total accumulation of 2.6 inches in [a 12-hour] period."); Docket 39-8 at 6 ("[T]he weather station closest to the Montivers' residence show[ed] 5.74 inches of rain in a 24-hour period from August 24 to 25, 2025.").

[8] Docket 40 at 3.

[9] Docket 39-2 at ¶ 6; *see* Docket 41-3 at 1-24.

[10] Docket 39-8 at 9.

[11] Docket 39-8 at 6.

bypass road and more areas of vegetation, and then destroyed a home at 2010 Second Avenue.[12]

Remnants from the neighboring house on Second Avenue combined with the existing debris flow struck the Residence at high velocity.[13] The debris flow ultimately damaged three homes (including the Residence and the Second Avenue home) and caused one fatality.[14] The Residence was deemed uninhabitable and was ultimately demolished.[15]

The parties' respective experts agree that a debris flow is a type of landslide.[16] Public authorities also described the occurrence as a landslide.[17] And the Montivers themselves publicly described the event as a landslide in interviews and online statements immediately following the loss.[18]

Coverage A of the Policy covers the dwelling premises. It lists 19 exclusions, including (1) earth movement, which it states is "not limited to ***earthquake***, landslide, mudflow, mudslide, sinkhole, subsidence [or] erosion," among other

---

[12] Docket 39-2 at ¶ 2. The neighboring home at 2010 Second Avenue was just uphill and across the street from the Residence. *See* Docket 39-5 at 1.

[13] Docket 39-2 at ¶ 6.

[14] Docket 53-3 at 1.

[15] Docket 39-18 at 11. This order will refer to the damage to the Residence as "the loss."

[16] Docket 39-8 at 7; Docket 53-3 at 1, 2, 4, 8.

[17] Docket 80-1 at 1-3; Docket 80-2 at 1; Docket 80-4 at 1; Docket 80-5 at 1; Docket 80-6 at 1.

[18] *See* Alaska News Source, In Depth Alaska: Ketchikan couple recount rescue from landslide-toppled home, at 12:55 (YouTube, Aug. 28, 2025), https://www.youtube.com/watch?v=ekib6OrZpRY.

earth movements.[19] Water damage is another listed exclusion, as is "weather that contributes in any way with a cause or event excluded in this section to produce a loss."[20] Another exclusion in Coverage A is Collapse. This exclusion states as follows:

> **Collapse**, except as provided in item **12. Collapse** under **Section I – Property Coverages, Additional Coverages**. However, we do insure for any resulting loss unless the resulting loss is itself a loss not insured under this section.[21]

Coverage C of the Policy provides personal property coverage and incorporates Coverage A's 19 listed exclusions.[22] It also lists 16 perils that are covered by the Policy, including "Falling objects."[23] This peril section provides that "[t]his peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object."[24]

A separate section of the Policy is titled Additional Property Coverages. It states at the outset: "The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy."[25] Relevant

---

[19] Docket 53-1 at 16-18, ¶¶ 1-19 (emphasis in original), 39.

[20] Docket 53-1 at 17-18, ¶¶ 9, 16.

[21] Docket 53-1 at 18, ¶ 19 (emphasis in original).

[22] Docket 53-1 at 39.

[23] Docket 53-1 at 20-21.

[24] Docket 53-1 at 21.

[25] Docket 53-1 at 22 (emphasis in original).

here is the following portion of the Collapse provision contained in the additional coverage section of the Policy:

> **12. Collapse.**
>
> a. We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:
>
> (1) The perils named under **Personal Property Losses We Cover**, with exception of item **12. Collapse** which is previously deleted in this endorsement[.][26]

Lastly, the Policy contains Special Provisions for Alaska. For building property losses, it provides:

> We do not cover loss caused directly or indirectly by any of the following excluded perils. However, if a loss is caused by a chain of causes and the dominant cause of such loss is not excluded under this policy, we will not deny coverage on the basis that a secondary cause of loss in that chain is excluded.[27]

Substantially identical language is set out in the Special Provisions for Alaska for personal property losses.[28]

On or about August 26, 2024, the Montivers' local insurance agent submitted a claim to Safeco under the Policy on behalf of the Montivers.[29]

On October 9, 2024, Safeco denied the Montivers' claim on three bases: the

---

[26] Docket 53-1 at 24, ¶ 12 (emphasis in original).

[27] Docket 53-1 at 39.

[28] Docket 53-1 at 39.

[29] Docket 39-2 at ¶ 7.

Earth Movement, Water Damage, and Weather exclusions.[30] The denial letter stated that the Montivers' "claim arises from earth movement which caused a landslide in the area."[31] The denial letter also stated that Safeco considered "the primary or dominant cause to be heavy precipitation which saturated soils, causing the landslide event."[32]

On November 13, 2024, the Montivers, through counsel, "urge[d] Safeco to reconsider its position and promptly pay the full policy limits under the Policy."[33]

On February 20, 2025, Safeco filed the instant declaratory judgment action, seeking a declaration that the Montivers are not entitled to coverage under the Policy.[34] According to Safeco's Complaint, "Damage caused by earth movement is excluded from both coverages A – DWELLING and C – Personal Property;" and "[i]n the alternative, the dominant cause of loss was either singularly or caused in combination by the following: earth movement, water damage, or weather, all of which are excluded from coverage."[35]

On March 11, 2025, the Montivers filed a separate action against Safeco in this Court, alleging breach of the insurance contract and bad faith in its coverage

---

[30] Docket 39-13 at 1-2; *see also* Docket 39-18 at 18.

[31] Docket 39-13 at 1.

[32] Docket 39-13 at 1.

[33] Docket 39-14 at 1-5.

[34] Docket 1 at 5, ¶¶ 20, 21.

[35] Docket 1 at 3, ¶ 8.

denial.[36] The discovery in that case has been stayed pending the Court's determination of the coverage issue.[37]

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.[38]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[39] In reviewing cross-motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[40] Where a case contains undisputed facts and

---

[36] *See Montiver v. Safeco Ins. Co. of Indiana*, Case No. 1:25-cv-00004-SLG (D. Alaska Mar. 11, 2025).

[37] Docket 23 at 2.

[38] Docket 1 at 1-2, ¶¶ 1-3.

[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[40] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

presents a pure question of law, the matter is suitable for dispositive relief.[41]

A federal court sitting in diversity jurisdiction applies the substantive law of the state in which the district court is located.[42] Under Alaska law, insurance policies are interpreted to give effect to the "objectively reasonable expectations of applicants and intended beneficiaries . . . even though painstaking study of the policy provisions would have negated those expectations."[43] To ascertain what an insured would reasonably expect, Alaska courts "look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, relevant extrinsic evidence, and case law interpreting similar provisions."[44] Ambiguities are "construed in favor of the insured."[45] Alaska law "construe[s] grants of coverage broadly and interpret[s] exclusions narrowly."[46]

**DISCUSSION**

The Montivers assert that the Collapse provision in the Additional Property

---

[41] *See Smith v. Califano*, 597 F.2d 152, 155 n.4 (9th Cir. 1979) (holding that where "parties . . . have agreed on the material facts" and "the dispute involv[ed] the proper interpretation of relevant statutes and regulations[,] . . . the case could . . . be resolved as a matter of law, [and] summary judgment was the proper procedural device").

[42] *See Erie v. Tompkins,* 304 U.S. 64, 78-80 (1938).

[43] *Est. of Wheeler v. Garrison Prop. & Cas. Ins. Co.*, 564 P.3d 611, 617 (Alaska 2025) [hereinafter *Wheeler*] (quoting *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000)).

[44] *Id.* (quoting *C.P. ex rel. M.L.*, 996 P.2d at 1223).

[45] *Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160, 1171 (Alaska 2018).

[46] *C.P. ex. Rel. M.L.* 996 P. 2d at 1223.

Coverages section of the policy unambiguously covers their loss.[47] Safeco maintains that the Earth Movement exclusion applies, and because the dominant cause of the loss was the landslide, the claim falls outside the Policy's coverage as a matter of law.[48]

### I. Collapse Coverage

The Montivers assert that each requirement of the Collapse provision is satisfied, and in the event of any ambiguity, the Collapse provision must be construed in favor of coverage.[49] The Montivers maintain that they are entitled to coverage under this provision because the trees that crashed into their house were "falling objects," which are encompassed within the perils covered by the Collapse provision.[50] Safeco does not dispute that there were trees at the leading edge of the debris flow, but maintains the "trees did not fall in isolation."[51] Rather, they crashed into the Montivers' home because of the landslide: "Without the slope failure and resulting earth movement, there would have been nothing to impact to the Montivers' home."[52]

Here, it is undisputed that a significant mass of trees came to rest against

---

[47] Docket 39 at 16.

[48] Docket 53 at 2.

[49] Docket 39 at 16; *see also* Docket 39 at 18-26.

[50] Docket 39 at 20-22.

[51] Docket 53 at 14.

[52] Docket 53 at 15.

the Residence.[53] And at her deposition, Safeco's expert agreed that "the mass of trees was the dominant feature of the debris mass" that made contact with the Residence.[54] As a result of the impact, the Residence's foundation was heaved, and the outside walls of the residence were significantly damaged.[55]

For purposes of the Collapse provision, the Court agrees with the Montivers that the trees that collided into their home can reasonably be interpreted to constitute falling objects.[56]

Safeco does not appear to take issue with this so much as it argues that irrespective of the provision of the Collapse clause, the Court must apply the dominant cause provision in the Policy, and it maintains that the dominant cause of the loss of the Montivers' home was the landslide, not the impact of the trees.[57] Safeco emphasizes the introductory language of the Additional Property Coverages section of the policy that states that the additional coverage is "subject to all the terms, provisions, exclusions, and conditions of this policy."[58]

---

[53] Docket 39-18 at 11.

[54] *See* Docket 39-17 at 20. Because the debris material underwent sorting, the process where heavier material among a mass moving downslope ends up at the front, the heavy uprooted trees were at the front of the debris when the debris flow collided with the Montivers' residence. Docket 39-17 at 32.

[55] Docket 39-18 at 11.

[56] *See* Docket 39 at 21 ("[T]he Policy's use of the term 'falling objects' encompasses any tangible thing that drops, descends, or goes down to a lower place, provided that it damages a roof or outside wall.").

[57] Docket 53 at 14-15.

[58] Docket 53 at 8 (citing Docket 53-1 at 22).

Alaska Statute 21.36.096 provides that an insurer may not deny coverage when a covered peril is "the dominant cause of a loss" and an excluded peril "is also in a chain of causes but operates only on a secondary basis." That state law requirement is incorporated into the Policy. But the statute does not constrain an insurer from voluntarily extending more coverage. Here, the Collapse provision contains a more permissive "one or more" causation standard: "We insure for direct physical loss to covered property involving collapse of the dwelling . . . if the collapse was caused *by one or more*" of the named perils, including "falling objects."[59] Thus, under this provision, the Montivers do not need to prove that the falling trees were the single dominant cause of their loss—but only that the trees were one contributing cause of the loss.[60]

Safeco does not directly address this tension between the dominant cause language elsewhere in the Policy and the "one or more" causes language in the Collapse provision. Rather, it simply asserts that the dominant cause standard must be applied.[61] According to Safeco, this Court need only "determine the dominant cause of the loss and apply the policy's grants of coverage and

---

[59] Docket 53-1 at 24 (emphasis added); *see also* Docket 57 at 8 ("'Falling objects' need not be the *triggering*, *dominant*, or *only* cause to result in coverage; they need only be *one* cause.") (emphasis in original)).

[60] Docket 57 at 8, 20; *see also* Docket 53-2 at 9 ("[T]he dominant cause of the loss was force exerted on the structure from a debris flow that, along with soil/earth materials and water, involved a significant mass of large fallen trees at the leading edge of the debris flow.").

[61] Docket 53 at 12.

exclusions to that cause."[62]

But the Policy read as a whole demonstrates that Safeco knew how to unambiguously address multiple causes when it set out the dominant cause standard, and yet used a different and broader causation standard in the Collapse provision.[63] The Alaska Supreme Court has applied the doctrine of *ejusdem generis* to the interpretation of insurance policies.[64] Under that doctrine, "a general term, when followed by specific terms, will be interpreted in light of the characteristics of the specific terms, absent clear indication to the contrary."[65]

Although the parties do not cite, and this Court is unaware of, cases that have addressed this precise issue, other courts have held general exclusions in policies of insurance inapplicable to additional collapse coverage. For example, similar to the case here, in *130 Slade Condominium Association, Inc. v. Millers Capital Insurance Company,* the policy excluded "collapse" from coverage, "except as provided in the Additional Coverage for Collapse."[66] The district court held that "this subparagraph indicates that the additional collapse coverage is not modified

---

[62] Docket 53 at 13.

[63] *Cf. C.P. ex rel. M.L.,* 966 P.2d at 1228 ("Allstate knew how to phrase an exclusion unambiguously when it wished to address multiple causes. An insured familiar with the entire policy could reasonably conclude from the absence of a similar clause in the liability coverage part that Allstate was not attempting to exclude multiple causes with respect to [certain] exclusions.").

[64] *See West v. Umialik Ins. Co.*, 8 P.3d 1135, 1141 (Alaska 2000).

[65] *Id.*

[66] 2008 WL 2331048, at *2 (D. Maryland June 2, 2008).

or qualified by any of the other listed exclusions that apply instead to the general coverage provisions."[67] Had Safeco intended its Collapse clause to require a dominant cause determination, it clearly could have included that language in that provision. "Where there is a direct conflict between a general exclusion and a provision for additional coverage – for example, a general exclusion for decay but additional coverage for collapse that grants coverage for a loss caused by decay – the specific additional coverage trumps the general exclusion."[68] Here, Safeco, by using the "one or more" causation standard in its Collapse section but referencing a dominant cause standard elsewhere, created a clear ambiguity as to what standard to apply under the Collapse provision, which ambiguity must be resolved in favor of the insured, meaning by application of the Collapse provision. The Court finds it clear from the text of the Collapse provision "that the parties intended *additional* coverage for collapse, not meaningless coverage canceled out by the general exclusions."[69]

For the foregoing reasons, the Court finds that the dominant cause provision does not apply to the Collapse provision in the Additional Property Coverages section of the Policy. Because no reasonable jury could conclude that the falling trees were not one cause of the loss of the Montivers' home, the Montivers are

---

[67] *Id.* at *6.

[68] *See generally Vale Fox Distillery LLC v. Central Mutual Insurance Co.*, 799 F. Supp. 3d 292, 304 (S.D.N.Y. 2025) (collecting cases).

[69] *Id.* at 305 (emphasis in original).

entitled to summary judgment as to coverage.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' Motion for Summary Judgment at Docket 39 is GRANTED and Plaintiff's Cross-Motion for Summary Judgment at Docket 53 is DENIED. The Clerk of Court shall enter a final judgment accordingly.

IT IS SO ORDERED this 17th day of September, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE